UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ANATOLY PRONIN,                          :

                    Plaintiff,           :
                                                   **OPINION**
          - against -                    :
                                                   03 Civ. 9559 (DC)
RAFFI CUSTOM PHOTO LAB, INC.,            :
VAN CHROMES LABORATORY, INC., and
ESTATE OF RAFFI ATAMIAN,                 :

                    Defendants.          :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**     ROCHELLE M. SIROTA, Esq.
                     Attorney for Plaintiff
                     98-05 67th Avenue
                     Rego Park, New York  11374

                     CITAK & CITAK, ESQS.
                     Attorneys for Defendants
                         By:  Donald L. Citak, Esq.
                     270 Madison Avenue, Suite 1203
                     New York, New York  10016

**CHIN, D.J.**

          In this employment discrimination case, plaintiff

Anatoly Pronin sues defendants Raffi Custom Photo Lab, Inc.

("Raffi Custom Photo"), Van Chromes Laboratory, Inc., and the

estate of Raffi Atamian[1] alleging age discrimination and

retaliation in violation of federal, state, and city law.

Defendants move for summary judgment dismissing all claims.  For

the reasons set forth below, the motion is granted in part and

denied in part.

---

          [1]  Raffi Atamian died on February 22, 2003, from
complications of cancer.  (Hartman Aff. ¶¶ 20, 49).

## BACKGROUND

## A.    The Facts

Construed in the light most favorable to plaintiff, the non-moving party, the facts are as follows:

At all times relevant to the instant action, Atamian was the president of Raffi Custom Photo, a company involved in processing and printing photography.  During the 1990s, Raffi Custom Photo employed more than 40 people.  Currently, it employs less than 20 individuals.  (Hartman Aff. ¶ 13).  Atamian hired plaintiff in June 2001 as a black and white custom photo printer. (Def. 56.1 Statement ¶ 6; Pl. 56.1 Statement ¶ 6).  At the time Pronin was 61 years old (Def. 56.1 Statement ¶ 6; Pl. 56.1 Statement ¶ 6) and Atamian was 60 years old.  (Hartman Aff. ¶ 20).  Pronin is an accomplished photographer, having received numerous prestigious awards for his work, and has worked as a custom photo printer for twenty years.  (Pronin Aff. ¶¶ 3-7). Among Pronin's co-workers at Raffi Custom Photo were Renate Flakowicz and Larry Williams, with whom Pronin worked in the black and white photo custom printing department.  (Id. ¶ 13).

### 1.    Alleged Discriminatory and Abusive Conduct by Williams

During his employment with Raffi Custom Photo, Pronin was subjected to insulting nicknames by Williams, who referred to Pronin as "Ayatollah Khomeni" and "bum."  (Id. ¶ 15).  Williams also "told [plaintiff] to 'take [his] bag and go home,' implying that [plaintiff] was worthless and/or sub-par."  (Id.).  The

nicknames and statements by Williams caused plaintiff "tremendous stress and depression." (Id. ¶ 17; Sirota Aff. Ex. B, Dr. Berger Initial Evaluation Report). Pronin felt constant tension and apprehension over Williams's abusive talk. Eventually he begged Williams to leave him alone, showing him the scar on his chest from heart surgery, in the hopes that Williams would take pity and stop harassing him. (Id. ¶ 19).

Sometime around November 2001, Pronin complained to a manager, Jean Hartman, about Williams's verbal abuse of him. He told Hartman "that Williams called [him] insulting nicknames, berated [him] and denigrated [his] work in front of the entire workgroup[,] causing [him] great humiliation and stress, and . . . asked her to intervene and remediate Williams'[s] conduct." (Id. ¶ 33). After the conversation, Williams called Pronin a "mother fucker" in front of their entire work group. (Id. ¶ 34). The comment made Pronin fear for his physical safety. (Id.).

"Some weeks later," Pronin again spoke with Hartman, telling her he was extremely upset and physically affected by Wiliams's abuse. (Id. ¶ 35). Hartman responded: "maybe you are too old to be working here." (Id.). Pronin complained to Atamian about Williams's treatment of him, although he does not recall when or on how many occasions. (Pronin Dep. at 90, 93-97).

## 2. **Williams's Assault on Flakowicz and Defendants' Investigation**

Williams's anger and abuse in the workplace was directed at other employees as well, including Flakowicz.

(Pronin Aff. ¶ 16).  In November 2001, Flakowicz and Williams had
a fight at work.  Pronin heard shouting from both and entered the
darkroom to see Renate on the floor crying, covering her face
with her hands; Williams was standing over her, fists clenched
and body stiff in an apparent rage.  (Id. ¶¶ 20-21).  Flakowicz
claimed that during the incident Williams yelled at her, pushed
her against a wall, and choked her.  See Flakowicz v. Raffi
Custom Photo Lab, Inc., 2004 WL 2049220, at *3-4 (S.D.N.Y. Sept.
13, 2004).  While Pronin did not witness the fight itself, he has
"absolutely no doubt that [Williams] did, in fact, assault
[Flakowicz] as she said."  (Pronin Aff. ¶ 23).

Some time after the November 2001 incident, in or
around early 2002, Atamian and his attorney met with plaintiff
and questioned him about the incident.  (Id. ¶ 24).  Pronin told
them that he would "not [be a] good witness for" them and that he
had "problems with . . . Larry."  (Pronin Dep. at 90).  He told
them that Williams harassed and insulted him, and criticized his
work, and that he could not "work like this."  (Id. at 90, 93).

In June 2002, Pronin again met with Atamian and his
lawyer, soon after Flakowicz filed and served her EEOC complaint
on defendants.[2]  (Pronin Dep. at 102-03).  See Flakowicz, 2004 WL
2049220, at *4.  The lawyer asked Pronin to sign a prepared
affidavit, describing what Pronin witnessed of the fight between
Flakowicz and Williams.  The affidavit concluded with the

---

[2]    Defendants represent that the Flakowicz EEOC complaint
was served in May 2002.  (Def. Reply Mem. at 9).  The Flakowicz
complaint is not in the record in this case.

typewritten sentence "I have no opinion on who started the fight or who was responsible." Pronin told Atamian and his lawyer that "the written statement did not accurately reflect what [he had] said," and that he "did not want to state any opinion as to who started the fight between Williams and Renate." (Pronin Aff. ¶ 27). According to Pronin, the lawyer told Pronin not to worry, and that the statement meant "the same thing" as not stating any opinion. Pronin "felt pressured to sign the statement since [Atamian] was [his] boss and [he] wanted to please him and . . . wanted to keep [his] job." (Id. ¶ 27).

During a third meeting with Atamian and his lawyer in December 2002, Pronin told them that he supported Renate's claims and would not be a witness for defendants. (Pronin Aff. ¶ 38). That was Pronin's last conversation with Atamian on the subject. Flakowicz filed a complaint, alleging, inter alia, hostile work environment and discrimination based on her gender, in this Court on December 13, 2002. Flakowicz, 2004 WL 2049220 at *4.

### 3. Termination of Plaintiff's Employment

In the fall of 2002, Chuck Zoeller, a representative from the Associated Press (the "AP"), one of Raffi Custom Photo's major customers, called Jean Hartman at Raffi Custom Photo to complain that the AP's negatives had been placed into the wrong sleeves. (Zoeller Aff. ¶ 8). Zoeller told Hartman that "this kind of error was simply intolerable and seriously jeopardized

AP's relationship with Raffi Custom Photo."[3] (<u>Id.</u>). Defendants claim they "strongly suspected that [p]laintiff was responsible for the mishap, because most (although not all) of the black and white printing work done at Raffi Custom Photo for the AP at that time was being done by [p]laintiff." (Hartman Aff. ¶ 33). Hartman states that she spoke with the black and white printers, all of whom expressed an understanding of the seriousness of the situation, except for Pronin who "cast blame on the customer." (<u>Id.</u> ¶ 35). Hartman expressed her "concerns about [p]laintiff and this situation [to] Raffi Atamian in the fall of 2002, who responded by indicating that he would take care of the situation." (<u>Id.</u>).

In January 2003, Atamian fired Pronin. (Pronin Aff. ¶ 38). Atamian never told Pronin why he fired him, nor did anyone at Raffi Custom Photo ever criticize Pronin's work or blame him for any mistakes. (<u>Id.</u> ¶ 40).

### 4. <u>Alteration of Plaintiff's Statement</u>

During discovery defendants produced a copy of the statement Pronin signed during one of his meetings with Atamian and his lawyer. At the end of paragraph five ("I have no opinion on who started the fight or who was responsible") is the following hand-written addition: "but I do not think Larry beat her up or would start the fight." (Sirota Aff. Ex. C). Pronin

---

[3] Plaintiff states that he has no knowledge whether this conversation took place (Pl. 56.1 Statement ¶ 19), but the record contains no evidence to contradict Zoeller's and Hartman's sworn statements in this respect.

did not add the hand-written statement, nor was the statement on the document at the time Pronin signed it. (Pronin Dep. at 109; Pronin Aff. ¶¶ 28-30).

## B. **Procedural History**

Plaintiff filed a charge of discrimination against defendants with the EEOC and obtained a Right to Sue letter dated November 24, 2003. (Sirota Aff. Ex. H). The instant action was filed on December 2, 2003, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et</u> <u>seq.</u> (the "ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, as amended ("Title VII"); the New York State Human Rights Law, New York Executive Law § 296 <u>et</u> <u>seq.</u>; and the New York City Human Rights Law, New York Administrative Code § 8-101 <u>et</u> <u>seq.</u>.

Specifically, the complaint asserts three claims: (1) hostile work environment, (2) termination based on plaintiff's age, and (3) retaliation. (Compl. at 8-11). The parties engaged in discovery and the instant motion for summary judgment followed. For the reasons set forth below, defendants' motion is granted with respect to plaintiff's hostile work environment and age discrimination claims and denied with respect to plaintiff's retaliation claim.

## DISCUSSION

## A. **Summary Judgment Standard**

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where

there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). There must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor to create an issue for trial. See id.

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

**B.   Hostile Work Environment**[4]

**1.   Applicable Law**

To prevail on a hostile work environment claim under
Title VII "a plaintiff must first show that the harassment was
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment."
Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (internal
quotations and citations omitted); see also Cruz v. Coach Stores,
Inc., 202 F.3d 560, 570 (2d Cir. 2000) (to defeat a summary
judgment motion on a claim of racially hostile work environment,
"a plaintiff must produce evidence that the workplace was
permeated with discriminatory intimidation, ridicule, and insult,
that was sufficiently severe or pervasive to alter the conditions
of the victim's employment") (internal quotation marks omitted).
The analysis of a hostile work environment claim under Title VII
or the ADEA is the same.   Brennan v. Metro. Opera Ass'n, 192 F.3d
310, 318 (2d Cir. 1999).

The misconduct must be sufficiently severe or pervasive
to create an objectively hostile or abusive work environment, and
the victim must also subjectively perceive the environment to be
abusive.   Faragher v. City of Boca Raton, 524 U.S. 775, 787

---

[4]      I address all of plaintiff's Title VII and state and
city law claims together because age and gender discrimination
claims brought under the New York State Human Rights Law and the
New York City Human Rights Law are subject to the same analysis
as such claims brought under Title VII.   See Mack v. Otis
Elevator Co., 326 F.3d 116, 122 n.2 (2d Cir. 2003); Cruz v.
Coach, 202 F.3d 560, 565 n.1 (2d Cir. 2000).

(1998) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  Additionally, the plaintiff must demonstrate that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 715 (2d Cir. 1996).

With respect to the objective showing, a single incident will not suffice unless "extraordinarily severe."  <u>Cruz</u>, 202 F.3d at 570 (quotation omitted).  Further, as the Second Circuit stated in <u>Patterson v. County of Oneida</u>, 375 F.3d 206 (2d Cir. 2004):

> The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

<u>Id.</u> at 227 (quoting <u>Harris</u>, 510 U.S. at 21, 23).  Additionally, "where reasonable jurors could disagree as to whether alleged incidents of . . . harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law."  <u>Id.</u> at 227.

Finally, a hostile work environment claim under Title VII or the ADEA requires a showing that the conduct occurred because of plaintiff's membership in a protected class.  <u>See</u> <u>Brennan v. Metro. Opera Ass'n</u>, 192 F.3d 310, 318 (2d Cir. 1999).

Abusive conduct in the workplace, if not based on a protected class, is not actionable under Title VII or the ADEA. These statutes prohibit discrimination and are not civility codes. <u>See</u> <u>Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 81 (1998).

## 2. **Application**

Here, although plaintiff alleges abusive conduct, he fails to present evidence from which a jury could reasonably find that the conduct was based on his age. In his affidavit, plaintiff states his belief that "Larry picked on me because I was older, and he thought he could get away with such conduct, since, if I complained and lost my job at Raffi Photo, I would not be able to find another job." (Pronin Aff. ¶ 19). In his Memorandum of Law, however, plaintiff makes no mention of his age as the basis of the hostile work environment; rather, plaintiff focuses on the sex-based hostile work environment allegedly suffered by his co-worker, Flakowicz, as the basis for his hostile work environment claim. (<u>See</u> Pl. Mem. at 18-20).

First, to the extent that plaintiff is making a hostile work environment claim based on his age, this claim fails. Williams insulted Pronin, calling him "Ayatollah Khomeini" and a "bum," and told him to "take [his] bag and go home," "incessantly belittl[ing] [Pronin], both personally and professionally." (Pl. Mem. at 19.). Plaintiff offers no evidence linking the conduct to plaintiff's age. While "facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim,"

plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially-neutral incidents were in fact discriminatory.  Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002).  Beyond Pronin's own speculation that Williams's treatment of him was based on his age, plaintiff offers nothing to show that Williams's treatment of him was age-based.  "Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Title VII or the ADEA.  Nakis v. Potter, 01 Civ. 10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (citing Brennan, 192 F.3d at 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.")).

Moreover, plaintiff's attempt to rely on Flakowicz's sex-based hostile work environment claim fails.[5]  Pronin relies on Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000), in arguing that evidence of harassment of his co-worker supports his own claim of hostile work environment.  See Cruz, 202 F.3d at 570 ("Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to

---

[5]     The Court notes that, even if it were relevant, plaintiff has presented no evidence in this case regarding the sex-based abuse allegedly suffered by Flakowicz, instead merely citing the Court's denial of summary judgment in Flakowicz v. Raffi Custom Photo Lab, Inc., 02 Civ. 9558, 2004 WL 2049220 (S.D.N.Y. Sept. 13, 2004).

support her claim."). Even assuming that evidence of a hostile work environment against women could serve as some evidence of a hostile work environment based on Pronin's age, there still must be enough evidence to conclude that a hostile work environment existed based on Pronin's age. Here, there simply is none.

Second, to the extent that Pronin is alleging a hostile work environment based on any protected class other than his age, this claim fails. Plaintiff argues that "[w]hile [he] did not experience verbal abuse which was sex-based directly, [he] was subject to the overall abuse which Flakowicz experienced in the workplace and was therefore, [sic] subject to the same hostile environment. Plaintiff's claims of hostile work environment are, therefore, properly stated under Title VII." (Pl. Mem. at 22). Apparently Pronin is arguing that, in addition to his hostile work environment claim under the ADEA based on his age, he states a claim of hostile work environment under Title VII by virtue of the gender-based discrimination allegedly suffered by his female co-worker. Even assuming Pronin could maintain such a claim,[6]

---

[6]     In Leibovitz v. New York City Transit Auth., 252 F.3d 179, 186 n.5 (2d Cir. 2001), the Second Circuit declined to decide whether and to what extent prudential standing concerns limit standing under Title VII. Other circuits have explicitly held that a plaintiff lacks standing to allege injury to third-parties from discrimination based on their protected classes, where plaintiff does not belong to that class. See, e.g., Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1180 (7th Cir. 1998) (white employee lacked prudential standing under Title VII to allege injury to black applicants from race discrimination); Childress v. City of Richmond, 134 F.3d 1205, 1209 (4th Cir. 1998) (Luttig, J., concurring) (white male plaintiffs lacked standing to allege discrimination against women and minorities on basis of gender and race); Patee v. Pac. N.W. Bell Tel., 803 F.2d 476, 478 (9th Cir. 1986) (male plaintiff lacked standing to

there is no factual basis for it.  Pronin has made no showing that the terms and conditions of his employment were affected by Williams's harassment of Flakowicz; merely working in the same area as Flakowicz and witnessing the conclusion of one incident between Williams and Flakowicz, without more, is insufficient.

Plaintiff has failed to put forth sufficient evidence to sustain a hostile work environment claim, under either the ADEA or Title VII; accordingly, defendants' motion for summary judgment on this claim is granted.

## C. __Age Discrimination__

### 1. __Applicable Law__

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," i.e., that there was discriminatory intent.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000); Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 119 (2d Cir. 1997).

---

assert rights of female co-workers discriminated against based on gender).  Nor has the Second Circuit addressed whether a loss of associational benefits claim under Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 211-12 (1972), applies to Title VII sex discrimination claims.  Leibovitz at 186 n.5 (citing Clayton v. White Hall Sch. Dist., 875 F.2d 676, 679-80 (8th Cir. 1989) (finding standing where plaintiff alleges hostile work environment injury from loss of association with minorities); EEOC v. Miss. College, 626 F.2d 477, 483 (5th Cir. 1980); Waters v. Heublein, Inc., 547 F.2d 466, 469 (9th Cir. 1976)).  Regardless, Pronin makes no such claim here.

### a.  **McDonnell Douglas Framework**

In the absence of direct evidence of discrimination, a
plaintiff in an employment discrimination case usually relies on
the three-step McDonnell Douglas test.  First, a plaintiff must
establish a prima facie case of unlawful discrimination by
showing that (1) he is a member of a protected class (2) who
performed his job satisfactorily (3) who suffered an adverse
employment action (4) under circumstances giving rise to an
inference of discrimination.  See McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802 (1973) (Title VII); Stratton v. Dep't
for the Aging, 132 F.3d 869, 879 (2d Cir. 1997) (ADEA).

Second, if the plaintiff establishes a prima facie
case, a rebuttable presumption of discrimination arises, and the
burden then shifts to the defendant to articulate a legitimate,
nondiscriminatory reason for the employment decision.  See
Reeves, 530 U.S. at 143; Stratton, 132 F.3d at 879.

Third, if the employer articulates a nondiscriminatory
reason for its actions, the presumption of discrimination is
rebutted and it "simply drops out of the picture."  St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) (citation omitted);
see James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).
The burden then shifts back to the plaintiff to show, without the
benefit of any presumptions, that more likely than not the
employer's decision was motivated, at least in part, by a
discriminatory reason.  See Fields, 115 F.3d at 120-21; Connell
v. Consol. Edison Co., 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish his prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-101 (2003); Harris v. City of New York, No. 03 Civ. 6167, 2004 WL 2943101 at *6 (S.D.N.Y. Dec. 21, 2004). It is not sufficient, however, for a plaintiff merely to show that she satisfies "McDonnell Douglas's minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." James, 233 F.3d at 153. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. See id. at 157; Connell, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in James, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove -- particularly discrimination." 233 F.3d at 157; see Lapsley v. Columbia Univ., 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of McDonnell Douglas test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); see also Norton v. Sam's Club, 145 F.3d 114, 118

(2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases.  In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### b.  <u>Verbal Comments and Stray Remarks</u>

Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff.  <u>See</u> <u>Schreiber v. Worldco, LLC.</u>, 324 F. Supp. 2d 512, 518-19 (S.D.N.Y. 2004); <u>Zhang v. Barr Labs., Inc.</u>, No. 98 Civ. 5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000) (citing cases).  Often, however, an employer will argue that a purportedly discriminatory comment is a mere "stray remark" that does not constitute evidence of discrimination.  <u>See, e.g.</u>, <u>Danzer v. Norden Sys., Inc.</u>, 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); <u>Campbell v. Alliance Nat'l Inc.</u>, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("'Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.'") (quoting <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992)).

In determining whether a comment is a probative

statement that evidences an intent to discriminate or whether it
is a non-probative "stray remark," a court should consider the
following factors: (1) who made the remark, i.e., a decision-
maker, a supervisor, or a low-level co-worker; (2) when the
remark was made in relation to the employment decision at issue;
(3) the content of the remark, i.e., whether a reasonable juror
could view the remark as discriminatory; and (4) the context in
which the remark was made, i.e., whether it was related to the
decision-making process. See Minton v. Lenox Hill Hosp., 160 F.
Supp. 2d 687, 694 (S.D.N.Y. 2004); Rizzo v. Amerada Hess Corp.,
No. 99 Civ. 0168, 2000 WL 1887533, at *5 (N.D.N.Y. Dec. 29, 2000)
("An employer's discriminatory statements will rise above the
level of stray remarks . . . when the statements are: (1) made by
the decision maker or one whose recommendation is sought by the
decision maker; (2) related to the specific employment decision
challenged; and (3) made close in time to the decision."); Ruane
v. Continental Cas. Co., No. 96 Civ. 7153, 1998 WL 292103, at *8
(S.D.N.Y. June 3, 1998); Mosberger v. CPG Nutrients, Civ. No. 01-
100, 2002 WL 31477292, at *7 (W.D. Pa. Sept. 6, 2002)
("Discriminatory stray remarks are generally considered in one of
three categories -- those made (1) by a non-decisionmaker; (2) by
a decisionmaker but unrelated to the decision process; or (3) by
a decisionmaker but temporally remote from the adverse employment
decision.") (internal quotations and citations omitted).

    Additionally, the Second Circuit has emphasized that
"[a]lthough evidence of one stray comment by itself is usually

not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of the evidence." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000) (quoting Danzer, 151 F.3d at 56); see also Schreiber, 324 F. Supp. 2d at 522-23. "Even 'stray remarks in the workplace by persons who are not involved in the pertinent decision making process . . . may suffice to present a prima facie case,' provided those remarks evidence invidious discrimination." Belgrave v. City of New York, No. 95 Civ. 1507, 1999 WL 692034, at *29 (E.D.N.Y. Aug. 31, 1999) (quoting Ostrowski, 968 F.2d at 182); see also Malarkey v. Texaco, Inc., 983 F.2d 1204, 1210 (2d Cir. 1993) (holding that statements made by non-decisionmakers were properly received "because they showed the pervasive corporate hostility towards [plaintiff] and supported her claim that she did not receive a promotion due to her employer's retaliatory animus"); Warren v. Halstead Indus., Inc., 802 F.2d 746, 753 (4th Cir. 1986) (holding that evidence of a "general atmosphere of discrimination," harassment, or threats is "relevant to the determinations of intent and pretext).

## 2. **Analysis**

At the outset, I assume that plaintiff has made out the prima facie case required by McDonnell Douglas. Defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's termination: Pronin's "lack of productivity relative to the other black and white printers"; a significant diminution

of business, particularly from the AP, for whose jobs Pronin was hired; an "egregious mistake" attributed to Pronin involving the AP; and Pronin's "position as the junior printer in terms of years of service." (Def. Mem. at 14).

Plaintiff argues that "defendants have failed, entirely, to set forth any legitimate non-discriminatory reason for their termination of plaintiff," for defendants admit they only "suspected," but did not have actual knowledge, that Pronin committed the error with the AP negatives; defendants never criticized plaintiff's work; and defendants never told plaintiff why he was being fired. (Pl. Mem. at 23-24). This argument fails. The burden on the defendants to articulate a non-discriminatory reason for plaintiff's termination "is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). Defendants have offered sufficient admissible evidence, including affidavits from the AP and defendants' employee, from which a jury could conclude that Pronin was fired for, inter alia, possibly committing an egregious error with AP's negatives. See Reeves, 530 U.S. at 142 (defendant meets burden by "offering admissible evidence sufficient for the trier of fact to conclude that" plaintiff was fired for the non-discriminatory reason).

Because defendants have met their burden of production in articulating a legitimate, non-discriminatory reason for

dismissing plaintiff, I proceed directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination.  I do so by evaluating first plaintiff's evidence, then defendants' evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole."  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 314 (2d Cir. 1997); see also Siano v. Haber, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), aff'd mem., 201 F.3d 432 (2d Cir. 1999).

### a.  **Plaintiff's Evidence**

Plaintiff offers the following evidence in support of his discriminatory termination claim:

First, Pronin was sixty-three years old when Atamian fired him.  (Def. 56.1 Statement ¶ 45).

Second, Hartman told Pronin: "maybe you are too old to be working here."  This comment, however, was a classic stray remark.  The statement was made six to eight weeks before Pronin was fired.  (Hartman Dep. at 40; Pronin Dep. at 152; Pronin Aff. ¶¶ 35, 37).  Hartman was not a decision-maker, nor was the comment made in the context of the decision-making process.  In light of the context here, i.e., a virtual absence of evidence of discrimination on the basis of age, the comment was a non-probative stray remark.

Third, the black and white photo work that Pronin had done was taken over by Cesar Gill, a twenty-seven year old

employee.  (Marmara Dep. at 8-9; Gill Aff. ¶ 2).  Plaintiff's own evidence, however, undermines this assertion and supports defendants' contention that Gill -- who was already an employee of Raffi Custom Photo -- merely picked up extra work in the black and white department, consistent with defendants' practice even before Pronin was fired.  (Pronin Aff. Ex. E, Gill Aff. ¶ 5; Marmara Dep. at 9-10).  Merely because a younger employee assumed some of Pronin's responsibilities does not mean that he was "replaced" by a younger employee.  See, e.g., Emanuel v. Oliver, Wyman & Co., 85 F. Supp. 2d. 321, 330 (S.D.N.Y. 2000); Brennan v. Metro. Opera Ass'n, No. 95 Civ. 2926, 1998 WL 193204, at *9 (S.D.N.Y. Apr. 22, 1998), aff'd, 192 F.3d 310 (2d Cir. 1999) (citing Wado v. Xerox Corp., 991 F. Supp. 174, 205 (W.D.N.Y. 1998) ("Merely because [plaintiff's] duties continued to be performed by a younger person does not support an inference of age discrimination.")).

In sum, plaintiff's only probative, admissible evidence of age discrimination is that he was 63 years old when he was discharged.

### b.   Plaintiff's Evidence

First, plaintiff was 61 years old when he was hired.

Second, plaintiff was hired and fired by Atamian, who was more than 60 years old.

Third, a majority of defendants' employees were over forty years old at the time plaintiff was fired.

Fourth, plaintiff was fired because defendants

suspected plaintiff of committing an egregious mistake that threatened a relationship with a client; plaintiff was less productive than other employees; business was diminished after 9/11; and plaintiff was the most junior in terms of service.

### c.   **The Record as a Whole**

Considering the evidence as a whole, and resolving all conflicts in the evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable jury could find that plaintiff's age was a factor in his dismissal.

The only admissible, probative evidence of age discrimination is the bare fact that plaintiff was 63 years old when he was discharged.  By itself, this evidence is not enough to defeat summary judgment.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517 (1993) (holding that in a discrimination case, plaintiff must prove that firing was a result of intentional discrimination); James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000); Pullin v. Potter, No. 01 Civ. 2641, 2003 WL 1907203, at *4 (S.D.N.Y. Apr. 18, 2003) (granting summary judgment when plaintiff's only evidence in support of age discrimination was "the mere fact that he was in the protected age category").

Further, the "same actor" inference undermines plaintiff's claim.  The Second Circuit has noted that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision

to hire." Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir. 1997). Atamian was the individual who both hired and fired Pronin, and Pronin was already 61 years old when he was hired. Atamian was himself older than 60 years at the time he hired and fired Pronin. Further, the hiring and firing decisions were made within two years of each other. See id. (same actor inference is even stronger "when the firing has occurred only a short time after the hiring"); see also Carlton v. Mystic Trans., Inc., 202 F.3d 129, 138 (2d Cir. 2000) (where an individual is discharged within a relatively short time after his or her hiring, "there is a strong inference that discrimination was not a motivating factor in the employment decision"); Emanuel v. Oliver, Wyman Co., 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) ("no reasonable juror could conclude that defendant fired plaintiff because he was a mere eleven months older than when he was hired"); Coleman v. Prudential Relocation, 975 F. Supp. 234, 241 (W.D.N.Y. 1997) (no age discrimination where plaintiff was hired at age 51 and discharged 14 months later).

In sum, sufficient evidence does not exist for a reasonable jury to find that defendant terminated plaintiff's employment on the basis of age. Defendant's motion for summary judgment on this claim is granted.

**D.   Retaliation**

**1.   Applicable Law**

Title VII prohibits an employer from firing an employee "because he has opposed any practice made an unlawful employment

practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see also N.Y. Exec. Law § 296(1)(e); N.Y.C. Admin. Code § 8-107(7). Thus, Title VII has two different clauses that each protects a different type of activity; the "opposition clause" protects an employee's opposition to an unlawful employment practice, while the "participation clause" protects participation in a proceeding under Title VII. See Deravin v. Kerik, 335 F.3d 195, 203 n.6 (2d Cir. 2003). Further, "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" Terry v. Ashcroft, 336 F.3d 128, 140-41 (2d Cir. 2003) (internal citations omitted).

To establish a prima facie case of retaliatory discharge, Pronin must show (1) he was engaged in protected activity (i.e., "participation" or "opposition"); (2) defendants were aware of that activity; (3) he was discharged; and (4) there was a causal connection between the protected activity and the termination or suspension. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir. 1998); see Terry, 336 F.3d at 141 (2d Cir. 2003); Sumner v. United States Postal Serv., 899 F.2d 203, 208-9 (2d Cir. 1990). A plaintiff may present proof of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against

the plaintiff by the defendant." <u>Gordon v. N.Y. City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000); <u>see also</u> <u>Cosgrove v. Sears, Roebuck & Co.</u>, 9 F.3d 1033, 1039 (2d Cir. 1993).

Although the burden that a plaintiff must meet at the prima facie stage is <u>de</u> <u>minimis</u>, the plaintiff must at least proffer competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. <u>See</u> <u>Cronin v. Aetna Life Ins.</u>, 46 F.3d 196, 204 (2d Cir. 1995).

### 2. **Application**

Retaliation claims are similarly governed by the burden-shifting framework set out by the Supreme Court in <u>McDonnell Douglas</u>. <u>Terry</u>, 336 F.3d at 141. Again, I assume that plaintiff has made out the <u>prima</u> <u>facie</u> case required by <u>McDonnell Douglas</u>.[7] As discussed above, defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's dismissal. Thus, I proceed directly to the ultimate question of whether

---

[7] The Court notes that plaintiff has articulated a <u>prima facie</u> case of retaliation under both the opposition and participation clauses of § 704(a). First, Pronin opposed what he reasonably believed to be discriminatory treatment of Flakowicz by stating his support for her. <u>See</u> <u>Sumner</u>, 899 F.2d at 209 (opposition clause protects informal protests, "including . . . expressing support of co-workers who have filed formal charges"). Second, Pronin participated in a proceeding under Title VII; he was questioned during interviews with Atamian and his lawyer surrounding the filing of Flakowicz's EEOC and federal complaints and was a prime potential witness of the assault on Flakowicz, had the case gone to trial. <u>See</u> <u>Jute v. Hamilton Sundstrand Corp.</u>, 321 F. Supp. 2d 408, 416 (D. Conn. 2004) (co-worker identified as witness); <u>EEOC v. Total Sys. Servs.</u>, 221 F.3d 1171, 1174 n.2 (11th Cir. 2000) (internal investigation may be a proceeding under Title VII if a formal complaint has been filed).

plaintiff has presented sufficient evidence from which a reasonable jury could find retaliation.

Plaintiff has presented sufficient evidence from which a reasonable jury could find that a retaliatory motive played a part in defendants' dismissal of him. Pronin has presented evidence that defendants were displeased with his position and participation in the investigation. Pronin maintained his support of Flakowicz throughout his employment, from the first interview of him (soon after the assault) to the last (weeks before his termination). During the third and final interview session, Pronin again stated his support for Flakowicz and told defendants that he would not be a witness for them. Defendants fired Pronin the next month.

Defendants' displeasure with Pronin's position on the assault is further evidenced by the following: soon after Flakowicz filed her EEOC complaint, defendants pressured Pronin to sign an affidavit that did not accurately state his position on the assault (i.e., stating that he "had no opinion" when in fact he stated that he did not want to give an opinion), telling him, inaccurately, that the statement was "the same thing."[8] At some point later the document was altered to include a handwritten addition stating that he did not believe Larry would

_____

[8]     The Court notes that Pronin was born in the Soviet Union and, as reflected in his deposition, has some difficulty with the English language.

- 27 -

have hit Renate or started a fight[9]; a reasonable jury certainly could deduce that this self-serving statement, added without Pronin's knowledge, could have been added by defendants. On these facts, a reasonable jury could conclude that defendants fired Pronin, at least in part, out of a retaliatory motive.

Defendants argue that plaintiff fails to produce sufficient evidence in support of his retaliation claim because the length of time between plaintiff's expressed support for Flakowicz's claims and his dismissal is too great to serve as circumstantial evidence of retaliation. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("Mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action [can be accepted as] sufficient evidence of causality . . . [but] the temporal proximity must be very close."). Defendants base this argument on the fact that Pronin first expressed his support for Flakowicz in early 2002 but he was not fired until January 2003. This argument fails. Pronin engaged in protected activities on three occasions: (1) during the first internal investigatory interview, after the November 2001 assault, when Pronin expressed support for Flakowicz; (2) during the second investigatory interview in June

_____

[9]     Plaintiff states that this document "should be precluded and its use by defendants barred in these proceedings." (Pl. Mem. at 4). Defendants do not rely on this document -- and indeed only mention it in response to plaintiff -- in their motion for summary judgment. To the extent plaintiff is requesting that defendants be barred from relying on the document at trial, plaintiff may make a motion in limine at the appropriate time.

2002, following Flakowicz's filing of her EEOC complaint; and (3)
during the third investigatory interview around the time
Flakowicz filed her federal complaint. That defendants did not
fire Pronin immediately after the first interview, but rather
waited until the third interview -- after Flakowicz had filed her
federal complaint and, arguably, things had come to a head --
does not undermine the inference of a retaliatory motive created
by Pronin's dismissal closely following the third interview.

Finally, although the record does contain evidence that
defendants fired Pronin for legitimate, non-discriminatory
reasons -- the complaint from the AP and defendants' apparent
belief that the error was committed by Pronin -- a reasonable
jury still could conclude that retaliation was a motivating
factor.

Defendants' motion for summary judgment on plaintiff's
claim of retaliation is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion for
summary judgment is granted in part and denied in part. The
parties shall appear for a pretrial conference on September 9,
2005 at 3:30 p.m.

SO ORDERED.

Dated:     New York, New York
           August 24, 2005

                                    DENNY CHIN
                                    United States District Judge

- 29 -